## Powell et al. v. Jones.

May 21, 1943.

S. T. Fruit for appellant.

W. S. Jones and Willis & Smith for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This is an action for trespass quare clausum fregit, filed in the Todd circuit court by appellee, E. D. Jones, against Wesley Powell and Waymond Powell, two of the heirs of their father, William Powell, seeking a recovery of $2,000, the value of timber which defendants cut or directed to be cut from the land of plaintiff, whose farm joined that of the Powells. The area from which the timber was taken contained 6.7 acres, the title to which was claimed by plaintiff, but which defendants in their separate answers denied and they affirmatively alleged that the title to that area was in the Powell heirs. William Powell, the father of Wesley and Waymond Powell and of his other surviving children (but who were not made parties to the action), entered into a contract with Bond Brothers of Louisville, Kentucky, a partnership, engaged in the business of manufacturing railroad ties.

whereby they sold some standing timber to be so manufactured and that in removing the timber from the Powell tract so purchased, Bond Brothers, with the consent of the two Powell defendants, crossed the dividing line between the Powell tract and plaintiff's adjoining one and cut timber from his land over the 6.7 acres, and while doing so damaged other young timber, thereby injuring plaintiff to the extent of the amount he claimed in his petition.

Plaintiff filed an amended petition alleging, among other things, that in 1919 after the death of William Powell a controversy arose between plaintiff, and his widow and heirs, as to the proper location of the line dividing their respective tracts; whereupon a written agreement was entered into in which the parties stipulated that the line dividing their respective tracts should be surveyed by Harry Wilkins, who was then the county surveyor of Todd county: "and wherever the said Wilkins runs this line we, and each of us, further agree to let same stand as a line between them, now and forever." That agreement was subscribed and acknowledged by all of the parties on February 11, 1919 (William Powell having died in 1918), and was put to record in the Todd County Clerk's office. Wilkins did run the line and established one or more corners which he marked by planting large stones. He made a report signed and acknowledged by him, and it was likewise recorded in the same office.

Defendants admitted in their separate answers the agreement referred to and that Wilkins, pursuant thereto, surveyed the line and made his report as indicated, but they claim that the report he made did not correspond with his actual survey as a foundation for his report. However, they denied that plaintiff owned the area of land from which the contested timber was cut, and affirmatively alleged that it belonged to the Powell estate. The case was tried before a jury, which returned a verdict in favor of plaintiff in the sum of $100 upon which judgment was rendered, after defendant's motion for a new trial was overruled, and this appeal by defendants is from that judgment.

The record, so far as we have been able to ascertain, does not disclose whether William Powell's widow was living at the time of the filing of the action, but if so, neither she, nor any of the other considerable number of

children that decedent left surviving him as his heirs, were in any wise made parties to the action. However, no complaint of any kind was made in the trial court with reference to such omission. Furthermore, the most material witnesses in the case were surveyors and their co-workers in making surveys of the contested line, and each of whom filed maps, as was also the map made by Wilkins, who had died before the filing of the action. In giving their testimony from the maps scarcely was a single point designated so as to be understood by this court or any other reader thereof. For instance, the witness would say that Wilkins "ran along here and stopped his line at this point," and which was the course pursued throughout the giving of their testimony in describing courses, corners and distances of the various surveys—all of which renders a proper understanding of the testimony extremely difficult. However, the map made by one of the surveyors for plaintiff, Frank Campbell—and confirmed by another surveyor testifying for plaintiff, Gayno Lacey, and their co-workers—indicates the true line run and reported by Wilkins above referred to, and colored it red. The same map also indicated a green line as the one claimed by defendants as the correct one run by Wilkins, but which they say he did not correctly give in his report, the area between the red line and the green one constituting the surface from which the contested timber was taken.

The jury necessarily found, by the verdict it returned for plaintiff, that he was the owner of the area from which the timber was cut and that the Powell estate did not own it. The witnesses in support of defendants' contention testified that Wilkins made a number of surveys before making his report, and in which he traversed different lines in endeavoring to locate the proper starting point for the performance of his task—after which he made his plat describing the corners, courses and distances along the dividing line, and incorporated that line in his report. Some witnesses who were present when Wilkins made his survey testified that he ran the final line, as incorporated in his report, whilst, perhaps, a greater number of witnesses who were present at the time contradicted that testimony; but they do not pretend to state that Wilkins did not finally conclude that the report he made was the correct one. Both Campbell and Lacey, surveyors and witnesses for plaintiff, each made three different surveys of the contested divid-

ing line, which was done from the Wilkins map. They made due allowances for variations, and their surveys tally exactly with that made by Wilkins. They each testified that in order to run the line where defendants claim it to be would require a variation of as much as or more than seven degrees since the Wilkins survey was made, and that such a deviation was impossible. Therefore, while the evidence is contradictory as to where Wilkins surveyed his line on the ground, there is no contradiction that the one he reported is the same line now contended for by plaintiff.

But it is said that the testimony of Campbell and Lacey is unreliable, since they began at a stone, which defendants claim was not the one planted by Wilkins as the beginning point; however, there was ample testimony showing that the rock from which Campbell and Lacey began their surveys was the one planted by Wilkins. The parties trace their respective titles to a common source; hence, there was no necessity of tracing either of them back to the Commonwealth, and though adverse possession was relied on by both parties, neither of them claimed to own beyond the dividing line fixed by Wilkins pursuant to the agreement referred to. See Small v. Hamlet, 68 S. W. 395, 24 Ky. Law Rep. 238. Therefore, the court did not err in refusing to be filed defendants' tendered answer relying on adverse possession (of which complaint is made) for two reasons—(1) That adverse possession was not available under the facts of the case as decided in the Small case, and (2) that it could be proven without a pleading in a case where it was available—it being one of the means of acquiring title to real estate by the one claiming to own it.

The court, by Instruction No. 1, told the jury to find for plaintiff if it believed from the evidence that the true line separating the respective farms of appellant and that of the Powell heirs was as found by Wilkins in his survey of that line, and as indicated by a red line on Campbell's map; but unless it so believed it would find for the defendants. Instruction No. 2 was directed to the measurement of damages of which no complaint is made; but appellants contend that Instruction No. 1 should not have been given, and that they were entitled to a peremptory instruction to find for them. We have already seen that there was ample evidence with reference to the true location of the reported Wilkins line to

authorize a submission of the case to the jury, and we are clearly convinced also that its verdict in locating that line was and is sustainable from the entire evidence heard at the trial.

Wherefore, the judgment is affirmed.